And you have a readout on your side of the lectern that tells you how much time you have left. And I remind you that rebuttal is for rebuttal only. We'll call the first case, U.S. v. Bevin. And we hear first from Mr. Sievert.  My name is Jordan Sievert, and I represent the defendant Stephanie Bevin in this appeal of a criminal restitution order from the Eastern District of Louisiana. The restitution order in this case is illegal. The court ordered Ms. Bevin to pay $2,300 to a credit card company that was not harmed by her conduct in the course of any scheme to which she pleaded guilty. A district court's authority to order restitution is established by statute but also limited by statute. And the Love case that we cited establishes that. For a fraud offense like Ms. Bevin's, the statute says that because the offense, quote, involves as an element a scheme, the statute only authorizes restitution to someone directly and approximately, quote, harmed by the defendant's criminal conduct in the course of the scheme. So the scheme that you have to think about is the scheme that is the element of the offense of conviction. Here there were three offenses of conviction that were fraud offenses that had schemes. But neither the pre-sentence report nor the district court nor the government's brief identify which of those three schemes the conduct that constituted the HSBC credit card fraud was in the course of. Instead, the government asked this court to infer that the party's, quote, mutual understanding shows that they intended the extension of Ms. Bevin's restitution liability to reach the HSBC credit card scheme. But neither the negotiated bill of information, which the government concedes was negotiated at pages six and seven of its brief, nor the factual basis, nor the plea agreement list the HSBC credit card conduct or even mention the possibility that relevant conduct would be used to calculate the restitution order. So, and that's particularly significant with respect to the plea agreement. The plea agreement, first of all, it included an integration clause that stated there was nothing outside of the plea agreement that would disclose what the understanding of the parties might be as the government now contends on appeal. It also was on the government's own letterhead. It was drafted by them and countersigned by the defendant and her attorney. And the statute requires that if there's going to be an extension of someone's restitution liability to someone other than a statutory victim of the offense of conviction, that has to be included, quote, in a plea agreement. And that's both the MVRA and the VWPA. Both restitution statutes require that. That didn't happen here. The plea agreement did not include that kind of language. Let me ask you something. You know, of course, sending a case like this back for resentencing drives the district court crazy, understandably. You know, he, the district judge asked the lawyer and the defendant, he said he listed all the restitution amounts, and he said, now, is this right? I want to be sure I'm getting this right. Is this right? And they had all the opportunities in the world to call his attention to the fact that this was wrong, that it was not on a crime of conviction. I mean, it just seems to me this is almost a factual error rather than a legal error. I mean, it just seems like they just overlooked the fact that this was not a restitution on a crime of conviction. And wouldn't that make a difference? Well, I think it would make a difference if this was a debate about the quantum or the amount or the calculation of the $2,300. But this isn't about that. It's not that type of fact-intensive question. The question is a question of law. And that's why typically it would receive de novo review as the Cothran case, which the government itself relies on, states. When there's a dispute about the victim status of one of the payees of a restitution order, that is a question of law, and it receives de novo review. You know, it looked to me like this Macheran case was the closest on point. I mean, that was exactly what we had here, where the defendant didn't object to the restitution order, and the judge gave a restitution, imposed restitution on an offense that was not a crime of conviction. And so we reviewed that under plain error. There is a division in this Court's case law regarding whether these types of claims should receive de novo review or plain error review. And I'm not familiar with that particular case. I don't know if it was published or not. But there are two published decisions that state that de novo review is the proper standard, even for a forfeited claim, because the claim, like this case, is that the sentence is illegal. Illegal sentences are different. It's a different type of claim, and they get a different standard of review when the claim is forfeited. The two published decisions were Nolan, which was 472, fed third, at 382, and note 52, and Chemical and Metal Industries, Incorporated, which was 677, fed third, at 7. Macheran is also published. Okay. 488, F third, 657. Okay. And the Nolan case and the Chemical and Metal Industries cases cite earlier precedent that explain that a claim that a sentence is illegal does get de novo review on appeal, even when it's forfeited. And that's consistent with the case law that existed before the Sentencing Reform Act's enactment in 1984, and its effective date, I think, in 1987, which at that time what the Sentencing Reform Act did was it deleted Rule 35A, former Rule 35A, of the Federal Rules of Criminal Procedure, which used to allow an illegal sentence claim to be brought at any time. So that could include collaterally. What the Act did was it forced those claims to only now be brought in a direct appeal or to be brought alternatively in a 2255. And it's interesting to note that the 2255 statute to this day still lists among the types of claims that are amenable to 2255 relief a sentence above the statutory maximum. So this is a particular type of claim. It's a type of claim that even before the adoption of Rule 35A, appellate courts would consider de novo. And, you know, we cite a concurring opinion by Chief Justice Chase, ex parte Milligan, that explains sort of the policy behind that. And it's just that he states, he words it this way, the law which protects the liberties of the whole people must not be violated or set aside in order to inflict, even upon the guilty, unauthorized, though merited justice. There really is an important constraint on the power of a court to impose a sentence that it's not authorized to impose by statute. Are you saying it's illegal because it exceeds the statutory maximum? Is that your argument? Yes, it exceeds the statutory maximum, and it does it in a particular way. It's not just that it exceeds it because of some calculation error. Oh, I understand. But because of the fact that the payee is not an actual statutory victim. The U.S. Supreme Court has a recent decision or two. I think it's in the Sixth Amendment context. I can't remember. I think it's forfeiture. I should have pulled it out before I got here this morning. Have you looked at that? They do have one. That's right. Did you look at that? I'm not familiar with the case you're talking about. It's a forfeiture case. It's a forfeiture case. It involves whether that's a statutory maximum and whether you have a Sixth Amendment right to jury trial on that. Okay. Well, I do know that the Court has reviewed Sixth Amendment claims for plain error. But in context of statutory maximum. I mean, anyway, I just wondered if you'd read it and what your take on it was. That's my only question. I don't happen to know about that case. I'm sorry. What more would it have taken here for her to have waived this claim? Because, I mean, that judge, he didn't point to this particular component of the sentence, but he did everything else except stand on his head. He did everything. I mean, how many times did he say, are you sure this is the right amount? Are you sure this is right? Oh, yes. I mean, so he had to say, now what about this component right here? Are you sure you're agreeing to this? Well, I mean, I suppose if we're talking about what the judge would have had to have said, he would have needed to have said, are you agreeing that HSBC is a victim under the statute? He never asked that, and they never agreed to that. And that's what distinguishes this case from Kahn. In Kahn, the defendant submitted a specific objection to a specific guideline enhancement. Kahn is the case the government relies on. A specific guideline enhancement. Then withdrew that objection to that guideline enhancement. Then, on appeal, raised the objection anew. So that was a waiver because the fact that they had put the question at issue, then withdrew it, established for the appeals court that they knew about it. They were aware of that as an issue and intentionally relinquished it. But the Kahn case, which is unsigned and per curiam and not cited very often, relies on Arviso Mata, which is a signed opinion by Judge Higginbotham. And it explains that, in that case, the defense attorney said, similar to our facts, that he, quote, had no problem with the PSR, close quote. And the Arviso Mata court said that is not enough to constitute a waiver because we can't infer from just a generic, I don't have a problem with the PSR, that you understand the specific point at issue that's now coming up on appeal and that you're intentionally relinquishing it. Well, this is a lot more detailed than that. Yeah, it is. Our transcript? Our case, yeah. Well, there is discussion about the restitution, but that whole discussion has to do with the bulk of the restitution. Well, but he listed it. They were listed, and he went over the list. He did. And, you know, the $2,300 is right there in the list, and he says, is this right? Is this right? And they say, yes. I mean, it's just hard to think of what the district judge did wrong. Well, I think the district judge's error is the same error as the defense attorney's, which is not appreciating the fact that HSBC was not a victim under the statute of any of the schemes of the conviction. The lawyer didn't have an obligation to call that to his attention? He certainly did. And that, you know, yes, he did have an obligation to do that. But I think the district court and the lawyer both missed it. And the fact that they missed it I think only underscores the reason why it wasn't waived. It wasn't intentionally relinquished. It was forfeited. But, again, this court has said repeatedly and has cited and applied that case law and other cases saying that a forfeited claim of an illegal sentence receives de novo review because the legal sentences are different. So for those reasons, I would ask this court to modify the judgment and affirm the judgment as modified by vacating that aspect of the restitution order, which I believe this court can do under 28 U.S.C. Section 2106. That would obviate the need for any further resentencing on remand. Is this lady paying any of this restitution? Is she making regular payments? I don't happen to know that. I could have checked with the financial unit, and I didn't happen to do it. I'm sorry. All right. Thank you very much. Okay. Thank you, Your Honor. Okay. Ms. Lieberman. Good morning, Your Honors. May it please the Court. I'm Sharon Lieberman. I was trial counsel below, and with me at counsel table is AUSA Kevin Boitman. This court should affirm the district court's ruling that the HSBC award was correct for two reasons. The first reason is that Bivon did waive the issue in the district court below by stating at least twice in the record through her or her attorney that the restitution amount was correct. And the particular site that, Your Honor, Judge Davis focused on, Record 152, where the judge specifically listed every single victim and the amount that they were owed, and also said that these are the victims that are entitled to restitution under the MVRA, which implicitly means that those are the victims who he considered were victims under the MVRA. And the defendant said, yes, that is correct. There were also two times in the sentencing transcript where the court referred to this March 18th letter, which was a letter from the probation office. That letter only listed five victims entitled to restitution, and those victims were all victims that were victims of count three. Let me ask you this. If we were to affirm, and they take this up on habeas, was counsel ineffective for failing to make the illegal restitution argument? No, I think he was not ineffective. The record does support the finding that the HSBC credit card use was part of the scheme to defraud. Which scheme? The scheme to defraud the bank. And if you look at the PSR under the offense conduct 190 to 191, the main method of her scheme to defraud the bank was that Ms. Bivon assumed the identities of multiple people, specifically Cerceri Spence. And it was Cerceri Spence's card, the HSBC card, which is the one that she activated just after the closing. Ms. Bivon went to the closing on July 8th as Cerceri Spence, signed all the closing documents as Cerceri Spence, and the money wasn't actually wired until July 11th. So I think that there's a temporal connection. There's certainly a mode and method connection where this woman's identity was used to fool as a part of the scheme. Is there evidence that she caused that card to be mailed to her house? I thought their brief said the mailman just by mistake delivered it to her house. They were neighbors and friends. What's the evidence? The evidence is that it was activated on July 9th. I don't have any evidence that she caused the mailing of the card, but I don't think it was a mistake because she was living in that house until she was found out in late October. Who was the envelope addressed to? They say it was misdelivered by the mailman to her house. What's the evidence on that? We did not have the opportunity to really flesh that out because it was a negotiated plea and everyone was in agreement that these were the parties that were going to— That's not part of the plea, though. Well, the plea agreement has the broad general language and no victims are mentioned. Just on the sentencing piece of it, they say it was mailed to Ms. Spence's house and the postman misdelivered it. What's the evidence on that point? That is the evidence. There's nothing more than that. What's the evidence that this was part of a scheme? Because she was using— What did she do to cause this credit card to be issued and then to come to her house? Do you have any evidence? No. Okay. Did she activate the card? Yes. She activated the card and she was— After it was delivered to her house. Right. So, again, so it's our argument that she waived—we waived this issue that the HSBC award was incorrect, but even if Your Honors disagree that the HSBC card was not part of the scheme to defraud, the correct standard of review in this case is plain error. And all the cases that the government has reviewed where you're looking at the illegality of a restitution award have reviewed these—reviewed it for plain error, not de novo. And I think, Your Honor, Judge Davis-Maturin is on point. And also there's a recent case, a January 2014 case, U.S. v. White, which the government cited on page 22 of its brief. That was a case where the defendant was convicted after a trial of two robberies and the district court ordered the defendant to pay on the second robbery, but he wasn't actually involved in the second robbery. The district court, under the fourth prong of plain error, stated that this—they were going to exercise their discretion not to reverse the district court judgment. What's our earliest decision on this, on the standard of review? The most recent? No, the earliest. We're bound by the earliest in time, not the most recent. A panel can't overrule a prior panel. So what was the very first panel ever ruling on the standard of review here? Your Honor, I don't know. You recognize that there's a conflict in our cases about the standard of review? I haven't seen any restitution case. I'm not aware of a restitution case where you haven't used plain error for restitution. And the White panel didn't overrule. It said that each panel has discretion whether or not to exercise the fourth prong. There is also a case that the government cited, page 22. In page 22 of the brief, United States v. Segura, that was not a restitution case, but they conducted a fourth prong analysis and declined to exercise their discretion to reverse the district court because of the nature of the offense and the past crimes that the defendant had committed. I think that that analysis would be similar here, would be relevant here because in this case the defendant committed many, many crimes during the course of the crimes that she was actually charged for and had most recently, she had been on probation for committing a crime almost identical to the one that's charged in this offense. Further, I think in terms of a policy standpoint, as Your Honors picked up, the district court really couldn't have done anything differently. They asked the parties, is the restitution amount correct, and gave the defendant multiple opportunities to correct any factual errors. I have to say, I read that transcript and I almost thought that the district judge was aware of this problem because he was so specific about it, but he certainly didn't flesh it out probably, but still. Well, Your Honor, and if I may, the district courts seemed to be concerned that he was getting the number correct and probation, and if I may speak off the record just briefly, you don't always know the identity of the victims until later in the case, and because this involved the sale of a home, that would have reduced the amount of restitution. I think he wanted to make sure everyone was on the same page, and that's why he kept asking. He didn't want to get it wrong, and so I think that if we were to reverse the district court here and not exercise that fourth prong of the plain error, it would send the wrong message that attorneys shouldn't really be paying attention and can really say whatever they want to the district court and then come back on appeal and question it again with a more favorable standard of review. So I think the plain error standard has to be proper here because restitution, really more than a criminal sentence of jail, is factually intensive because you have to figure out who is the victim, what is the scheme, what is the loss amount, and really the district court is the place to do that. Well, the right to restitution stems from a statute, and either you have the right or you don't, or you can be ordered to pay or not, and if you aren't ordered to pay, it seems like you could certainly argue that that's an illegal order. Exactly, except that I would disagree in the sense that, you know, this falls under the part of the MVRA that talks about a scheme to defraud, and then you have case law such as Adams that says that you do need to look to the mutual understanding of the parties, and that's a factual question. What is a scheme to defraud? So I think that it's a little different in that sense. But you've got to have evidence to support the scheme. Here we go again. I mean, failing evidence, failing all these arguments, we get back to is it authorized by the statute or not, and is that subject to no vote or plain error review? Well, again, I don't think there was a lack of evidence. I think that there's a plausible argument that the use of the HSBC credit card, because it was the same identity as Cerceri Spence, was part of the scheme to defraud the bank, and then if you look at the totality of the circumstances, which includes the mutual understanding of the parties, as the parties represented at the sentencing hearing, I think that they didn't object because they understood that HSBC was part of the scheme. They didn't object to the PSR. The PSR characterized the HSBC credit card use as part of the offense conduct. So I think looking at all that. Can we gain the link that links the credit card, you know, fraudulently drawing on this credit card that's mistakenly delivered as part of the scheme that's charged? Yes. So the closing happened on July 8, 2008. Ms. Bivon appeared at the closing as Cerceri Spence, signed power of attorney as Cerceri Spence. She moved into the house very soon after. When she moved into the house, that's when she got the credit card and activated it, and then on July 11th was when the wire was completed. She got it when? So the fact that the card was misdelivered to the house that she got through the fraudulent mail, fraudulent wire fraud, connects it up? Yes. Tell me how the wire fraud connects up. Well, so the purpose of the wire fraud was she could have the money to complete the closing of the house, and she couldn't go to the closing house herself because she had lost the house under foreclosure. And so she creates this scheme where she becomes Cerceri Spence, and it's the government's argument that you know, I know, and what I'm saying, Get to the credit card part. Yeah, well, the credit card part just substantiates that if anybody were ever to question it, that's the government's argument for how it's connected. And I think it is plausible on these facts taking into consideration that the fact, the mutual understanding of the parties where the parties were up there in court agreeing to it, the defendant never objected to any of these facts or rebutted any of the facts in the PSR and agreed to HSBC being entitled to restitution at the sentencing hearing. The PSR doesn't say that she applied for the credit card as Ms. Spence or? No. Well, Your Honor, if the court has no further questions, we would ask that the court affirm the district court's restitution to HSBC. Okay. Thank you very much. Mr. Savar, back to you. In the published chemicals and metals industries incorporated case, there was a forfeited claim that the restitution award exceeded the statutory maximum, and the government conceded that de novo review applied because forfeited illegal sentence claims received de novo review. As far as the district court asking whether the amount was correct, that has to be viewed in context of the previous objection, the previous dispute. There was a dizzying array of several different people who had losses falling out from the repurchase of the foreclosed home. For example, one of them was the bank that paid the closing costs. So what he was trying to do was make sure that the particular losses for that particular scheme matched up with the particular payees. And that's what he was saying when he said, are the payees incorrect? The payees are incorrect if not tell me. The payees weren't incorrect in terms of that particular scheme in the context of the objection that had been made previously, and that's why the defense attorney said, no, that's what we received from the probation officer, and I believe those are correct. That's not enough to constitute a knowing, intentional waiver of the question of the victim status of HSBC credit card. In terms of if the government wanted the restitution liability to extend to the HSBC scheme, it should have put that in a plea agreement. It didn't. The ineffective assistance question was a good one because I think it would have been an effective assistance for the attorney to fail to identify this issue and ask the court to not order this restitution because there is a reasonable probability that but for his failure to do that, this restitution order wouldn't be in the judgment. And so, I mean, I appreciate the concern about this case having to go back to the district court, although, as I mentioned, I think this court can simply modify the judgment, but it may go back to the district court if this court doesn't act now anyway on a 2255 and a potentially successful 2255. The government, in the argument that we just heard, attempted to connect the HSBC credit card to the count three bank fraud to repurchase the foreclosed home. Ms. Bivon went to the closing on July 8th. She received, well, we know she activated the card on July 9th, so I assume that she went to the house that day and got the card and activated it, although that's not in the record. Then the wire that funded the repurchase occurred two days later on July 11th, but the purchases from the HSBC credit card did not occur, according to paragraph 20 of the PSR, until August through December after the bank fraud was done on July 11th. So there is a temporal discontinuity, and in addition to that, there's just no connection in terms of a scheme to rebuy a home and the HSBC credit card purchases of beer and other items. I mean, I've taken out home loans before where the mortgage company wanted me to use a credit card to have them pull my credit report. So if she had used the credit card to in some way facilitate the repurchase of the foreclosed home, there would be more of a connection. We don't have that here. We just have purchases of Keystone beer and other items. What is the case that you argue controls, the oldest case? The oldest case that controls the question of the de novo review? Yes. Well, Nolan and Chemical and Metal Industries both applied the illegal sentence de novo review to an illegal sentence claim in the context of restitution. I think the oldest recent case that does that after the Sentencing Reform Act was, I believe, Sias. But if you go back before the Sentencing Reform Act, I've cited a few different cases in my brief that— What's the date of Sias? I believe I'm blanking on the date on Sias. I'm sorry. It's in your brief, huh? It is cited in our brief, yes, Your Honor. And I would just note that the commentary to Rule 35A, which allowed for an illegal sentence to be corrected at any time, it's very simple. It's one sentence long. It states it, quote, continues existing law. And that's in the 1944 Advisory Committee notes to Rule 35. So for those reasons, I would ask that this Court modify the judgment and affirm the judgment as modified. Thank you. Thank you very much. Thank you. We have your case.